Charles W. HALLECK, Plaintiff,

v.

Henry A. BERLINER, Jr., et al., Defendants.

Civ. No. 76–1985.

United States District Court, District of Columbia.

Jan. 26, 1977.

Motion to Reconsider and Amend Denied Mar. 7, 1977.

28. See note 27 *supra*, concerning plaintiffs' § 14(d)(4) claim.

John W. Karr, Karr & Graves, Washington, D.C., for plaintiff.

John R. Risher, Jr., Corp. Counsel for the District of Columbia, Robert L. Chernikoff and James C. McKay, Jr., Asst. Corp. Counsel, Robert S. Bennett, of counsel, Washington, D.C., for defendants.

THOMSEN, Senior District Judge.*

Plaintiff, a judge of the Superior Court of the District of Columbia, filed this action for declaratory and injunctive relief on October 26, 1976, seeking to have this court: (I–A) declare unconstitutional certain provisions of §§ 1521–30 of Title 11 of the D.C. Code, which create the District of Columbia Commission on Judicial Disabilities and Tenure (the Commission) and deal with its duties in evaluating judges seeking reap-

* Of the District of Maryland, sitting by designation.

pointment; (I–B) declare void the September 1975 evaluation by the Commission of plaintiff's candidacy for reappointment as a judge of the Superior Court; (II–A) declare unconstitutional § 11–1526(a)(2)(C) of the D.C.Code, dealing with the disciplinary responsibilities of the Commission; and (II–B) enjoin the disciplinary proceeding concerning plaintiff pending before the Commission.

## The Statutes

In 1970, Congress passed the District of Columbia Court Reorganization Act of 1970 (the Court Reorganization Act), D.C. Code, § 11–101 et seq. (1973), pursuant to its power to "exercise exclusive Legislation" over the District of Columbia under Art. I, § 8, cl. 17, of the United States Constitution.[1] Under the Court Reorganization Act, several trial courts were merged into the newly created Superior Court of the District of Columbia, § 11–901; fifteen year terms were established for judges of the Superior Court, § 11–1502; and the District of Columbia Commission on Judicial Disabilities and Tenure was created and empowered to suspend, retire or remove judges of the District of Columbia courts, § 11–1521, subject to review by a special court of three

federal judges designated by the Chief Justice, § 11–1529.

In 1973 Congress again exercised its Art. I, § 8, cl. 17 power by enacting the District of Columbia Self-Government and Governmental Reorganization Act (the Home Rule Act). Act of Dec. 24, 1973, Pub.L.No. 93–198, 87 Stat. 774. In Title IV, Part C (the Judiciary) of the Home Rule Act, now codified in D.C. Code, Title 11, Appendix (Supp. III, 1976), the Commission was reorganized[2] and by § 433(c) was given the additional function of evaluating the candidacy of a judge of the District of Columbia courts seeking reappointment to judicial office. Section 433(c) is set out in the margin.[3]

## Historical Facts

By appointment of the President, with the advice and consent of the Senate, plaintiff had been commissioned a judge of the Court of General Sessions for a ten-year term, on October 20, 1965. Under the Court Reorganization Act, § 11–1501 as amended by Pub.L.No. 91–358, § 194, 84 Stat. 594, such a judge serves as a judge of the newly created Superior Court until the expiration of his existing term, and "until his successor is appointed and qualifies,"

1. The Court Reorganization Act is discussed in *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

2. The Commission's disciplinary powers under the Court Reorganization Act were restated in § 432 of the Home Rule Act.

3. Section 433(c) provides:

"(c) Not less than three months prior to the expiration of his term of office, any judge of the District of Columbia courts may file with the Tenure Commission a declaration of candidacy for reappointment. If a declaration is not so filed by any judge, a vacancy shall result from the expiration of his term of office and shall be filled by appointment as provided in subsections (a) and (b). If a declaration is so filed, the Tenure Commission shall, not less than thirty days prior to the expiration of the declaring candidate's term of office, prepare and submit to the President a written evaluation of the declaring candidate's performance during his present term of office and his fitness for reappointment to another term. If the Tenure Commission determines the declaring candidate to be exceptionally well qualified or well

qualified for reappointment to another term, then the term of such declaring candidate shall be automatically extended for another full term, subject to mandatory retirement, suspension, or removal. If the Tenure Commission determines the declaring candidate to be qualified for reappointment to another term, then the President may nominate such candidate, in which case the President shall submit to the Senate for advice and consent the renomination of the declaring candidate as judge. If the President determines not to so nominate such declaring candidate, he shall nominate another candidate for such position only in accordance with the provisions of subsections (a) and (b). If the Tenure Commission determines the declaring candidate to be unqualified for reappointment to another term, then the President shall not submit to the Senate for advice and consent the renomination of the declaring candidate as judge and such judge shall not be eligible for reappointment or appointment as a judge of a District of Columbia court."

§ 11–1502, or until he is removed, suspended or involuntarily retired from office under § 11–1526. Subject to these provisions, plaintiff's term ran until October 20, 1975.

Pursuant to § 433(c), see note 3 above, and after the Commission had informed him of his right to do so, plaintiff filed with the Commission on July 10, 1975, a declaration of candidacy for reappointment as a judge of the Superior Court. As contemplated by the statute, the Commission received and gathered information pertaining to plaintiff's candidacy and, after advising plaintiff and his counsel of the matters which were giving it concern, on September 16, 1975, met with plaintiff, who was accompanied by his counsel and others, to discuss aspects of plaintiff's judicial conduct as they related to his fitness for reappointment.[4] Thereafter, on September 19, 1975, the Commission submitted to the President an evaluation of plaintiff's performance as a judge and the Commission's determination that plaintiff was "qualified" for reappointment to another term.

Under § 433(c) of the Home Rule Act, a determination that a declaring candidate is "exceptionally well qualified" or "well qualified" results in automatic reappointment for a full term; a determination that the candidate is "unqualified" makes the candidate ineligible for reappointment; a determination that the candidate is "qualified" for reappointment means that the President may nominate the candidate for reappointment, subject to the advice and consent of the Senate. The President forwarded to the Senate his nomination of plaintiff for reappointment, which was then referred to the Senate Committee on the District of Columbia. That Committee held extensive public hearings on December 3, 1975, and

voted unanimously on August 10, 1976, to report favorably to the full Senate the nomination of plaintiff.[5] The Senate, however, did not act on plaintiff's nomination for reappointment before adjourning *sine die* on October 1, 1976, until January 1977. Under Rule 38.6 of the Senate Standing Rules, plaintiff's nomination must be returned to the President. Senate Manual, 94th Cong., 1st Sess. (1975 ed.). If the President again nominates plaintiff, the Senate can again consider giving its advice and consent.

In the early part of 1976, while plaintiff's nomination for reappointment was before the Senate, the Commission received information relating to plaintiff's judicial conduct, on the basis of which it initiated an investigation to determine whether grounds existed for disciplinary proceedings under § 11–1526 of the D.C. Code.[6] On June 14, 1976, the Commission served on plaintiff a "Notice of Formal Proceeding", in which it informed plaintiff that specific instances of his conduct were to be the subject of a disciplinary hearing to determine whether the Commission should take action under § 11–1526. In that notice it was stated that the alleged conduct, if it had in fact taken place, would be in contravention of Canons 2A and 3A(3) of the Code of Judicial Conduct of the American Bar Association. The Joint Committee on Judicial Administration in the District of Columbia had adopted the ABA Code of Judicial Conduct on February 16, 1973.[7]

On August 26, 1976, the Commission notified plaintiff that the hearing would be held on September 29, and informed him on September 21 that the Commission would take "official notice" that plaintiff had

---

**4.** The evaluation proceedings are discussed in Part I of this opinion.

**5.** In its report the Senate Committee for the District of Columbia quoted most of the Commission's report to the President and concurred in the Commission's determination that plaintiff was qualified for reappointment. Executive Report No. 94–32, 94th Cong., 2d Sess., August 27, 1976.

**6.** The provisions of D.C. Code § 11–1526 (1973) have been restated in § 432 of the Home Rule Act. Title IV, Part C (the Judiciary) of that Act, which includes § 432, is recodified in an Appendix to Title 11 of the D.C. Code (Supp. III, 1976). For convenience, these provisions are hereinafter referred to only as § 11–1526.

**7.** See District of Columbia Courts, Annual Report 1973, p. 8.

made certain representations at the September 16, 1975, reappointment conference, which the Commission felt were not borne out by plaintiff's subsequent conduct. Following an exchange of correspondence and the filing of various motions by plaintiff, the hearing on the disciplinary charges against plaintiff was set for October 27, 1976.

### The Proceedings Herein

On October 26 plaintiff filed this action, seeking inter alia to enjoin the disciplinary hearing set for the next day. Noting that no judge of this Court was available to hear the matter, Judge Bryant, on October 27, entered an order restraining the Commission from proceeding with the hearing until the further order of the Court. All of the regularly assigned judges of this Court promptly disqualified themselves and, on the same day, the Chief Justice of the United States designated the undersigned judge to sit as a judge of this Court to hear this case.

At a conference in chambers held on the morning of October 28, the parties agreed to a procedure for handling the case, and this court entered the following order:

"The parties have agreed that the hearings on all requested injunctions and declaratory relief be held at the same time. The Court has fixed that time as Monday, November 15, 1976, at 10 a.m., in the United States Courthouse in Washington. Both sides will file briefs with me not later than Monday, November 8.

"The parties are further agreed that the Commission may set its proposed hearing on Monday, December 13, 1976, subject to further order of the Court."

The trial commenced on November 15, but only after the court denied plaintiff's request for a fourteen day continuance, which he sought on the morning the trial was scheduled to begin, and after the court directed that plaintiff's belated attempts to acquire discovery by deposition be accommodated by permitting plaintiff's counsel wide latitude in asking questions of wit-

nesses designed for discovery purposes. All of the testimony which was taken for discovery purposes was afterwards offered in evidence by plaintiff. On the fourth day of the trial, November 18, plaintiff's counsel complained for the first time of his inability to obtain documentary discovery and requested that the proceedings be recessed to allow documentary discovery to take place. The court acceded to that request, but stated that the conclusion of the evidence and argument should take place within two weeks, i. e., by December 2, since the agreed date for the disciplinary hearing was December 13. Subsequently, the court set December 2 and 3 for the completion of the presentation of evidence and argument. On the afternoon of Friday, November 26, eight days after the proceedings were recessed to provide plaintiff's counsel an opportunity to seek documentary discovery and only four working days prior to the scheduled resumption of the trial, plaintiff's counsel served on defendants a request for production of documents which, in effect, requested that the Commissioners produce every document of any sort they have in their possession referring to Judge Halleck. In order to permit a proper presentation and consideration of the various questions involved in plaintiff's request, the court postponed the case once again, this time until Wednesday, December 8. On December 7 plaintiff filed a motion to compel production of those documents. When the case resumed on December 8, the court denied that motion. Plaintiff then presented additional testimony and documentary evidence,[8] and each side closed its case on December 8. Final arguments by both sides were heard on December 9.

By its order issued December 10, the court directed that the Commission hearing set for December 13 could proceed, but that defendants be enjoined from "reaching, deliberating upon or discussing a decision with respect to the charges against Judge Halleck and from making any public or private statement whatsoever with respect to what

---

**8.** Plaintiff had already offered in evidence more than 50 documents of various sorts.

transpired at the hearing, until after this court has filed its opinion and entered its judgment in this case." A request for a stay of that order was denied by a panel of the United States Court of Appeals for the District of Columbia Circuit (Fahy and Leventhal, JJ.) on December 11.

The Commission held its disciplinary hearing on December 13. On December 30 plaintiff moved this court to reopen the record in this case for the purpose of receiving into evidence a transcript of that disciplinary hearing, which was attached to the motion. Defendants have filed a memorandum in opposition to that motion. This court has concluded that the transcript should be admitted for the limited purpose of shedding whatever light it may on the issues properly before this court, but that this court should not undertake to decide issues which should be decided by the Commission, subject to review by the special court provided for in § 11–1529 of the D.C. Code. This court has examined the transcript with that limitation in mind.

## DISCUSSION

### I Reappointment Proceedings.

#### I–A

■ Plaintiff contends that the provisions of the Court Reorganization Act creating the Commission and the provisions of the Home Rule Act giving the Commission duties and powers with respect to the reappointment of judges of the District of Columbia courts whose terms are about to expire, see note 3 above, encroach upon judicial independence, in violation of the doctrine of separation of powers derived from the first three Articles of the Consti-

tution. This court does not agree with that contention.

■ Under Art. I, § 8, cl. 17, Congress has the power to legislate for the District of Columbia. That power is plenary, and under it Congress may exercise within the District of Columbia all legislative powers which a state legislature may exercise over a state's affairs, subject to whatever restrictions are placed on the exercise of such powers by the Constitution. *Palmore v. United States*, 411 U.S. 389, 397, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 108, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953); *Capital Traction Co. v. Hof*, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899). In the exercise of that power Congress has created for the District of Columbia a local governmental structure, including a local court system, analogous to that of a state. The judges who are appointed and confirmed as judges of that system are not Article III judges, and do not have the tenure and salary protection accorded by Article III. *Palmore v. United States,* supra, 411 U.S. at 405–410, 93 S.Ct. 1670.[9] The validity of the statutory provisions challenged by plaintiff and the proceedings of the Commission thereunder must be judged by the applicable provisions of the Constitution.

■ It is doubtful whether the doctrine of separation of powers applies with the same force to the governmental structure of the District of Columbia as it does to the federal government.[10] It is not necessary, however, to decide that question in this case, because, even assuming that the doctrine does so apply, this court concludes, for reasons stated below, that the statutory provisions challenged by plaintiff and the proceedings of the Commission thereunder

---

9. The opinions in *Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), relied upon by plaintiff, deal with an Article III judge, and are not dispositive of any issue in this case.

10. The Constitution does not require the states to distribute the powers of government strictly in accordance with the separation of powers required by the Constitution for the national government. *Dreyer v. Illinois*, 187 U.S. 71,

83–84, 23 S.Ct. 28, 47 L.Ed. 79 (1902); *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 225, 29 S.Ct. 67, 53 L.Ed. 150 (1908); *Hughes v. Superior Court*, 339 U.S. 460, 467, 70 S.Ct. 718, 94 L.Ed. 985 (1950). Nor does the Constitution expressly require that the three branches of the tripartite governmental structure established by Congress for the District of Columbia must duplicate the structure of the national government.

do not violate the doctrine of separation of powers.

The evaluation function now served by the Commission in the reappointment process was previously served by the executive and legislative branches of the Federal Government. Before the creation of the Commission in 1970 and the grant to the Commission in 1973 of duties with respect to reappointment, judges of the local courts of the District of Columbia were appointed by the President, with the advice and consent of the Senate, for 10-year terms, and were eligible for reappointment by the same process for additional 10-year terms. See Act of Sept. 21, 1966, Pub.L.No. 89–598, § 1, 80 Stat. 825. Plaintiff was appointed to such a 10-year term in 1965. If the Commission had not been created and given its present functions with respect to the evaluation of judges seeking reappointment, plaintiff could have been continued in office for an additional term only upon appointment by the President, by and with the advice and consent of the Senate.[11]

No interference with judicial independence results from allocating to the Commission functions theretofore served not by the judiciary but by the President and the Senate. The Commission is an independent body composed of seven members, one appointed by the President of the United States, two by the Board of Governors of the unified District of Columbia Bar, two by the Mayor of the District of Columbia, one by the Council of the District of Columbia, and one by the Chief Judge of the United States District Court for the District of Columbia. See § 431(e)(3) of the Appendix to Title 11 of the D.C. Code (Supp. III, 1976). In the reappointment process provided for in § 433(c), see note 3 above, the Commission gathers and considers information about a judge who has filed a declara-

tion of candidacy for reappointment, then prepares and submits to the President an evaluation of the judge's performance during his term of office and his fitness for reappointment to another term.[12] If the Commission determines that the judge is "exceptionally well qualified" or "well qualified" for reappointment to another term, his term is automatically extended for another full term; if the Commission determines that the judge is "qualified" for reappointment, the President may nominate him for reappointment, subject to confirmation by the Senate; if the Commission determines that the judge is "unqualified," he is not eligible for reappointment. After considering oral and written arguments by counsel and the pertinent authorities, this court concludes that the statutory shifting of part of the power of reappointment from the President and Senate to the Commission, in the manner described above, does not encroach upon the independence of the judiciary of the District of Columbia.

Plaintiff has attempted to prove that the Commission did not function as an independent body while evaluating his candidacy for reappointment as a judge. He contends that the office of the United States Attorney for the District of Columbia made an "institutionalized effort" to block plaintiff's reappointment, and that such involvement by the executive branch is an unconstitutional encroachment upon judicial independence. The evidence shows that members and former members of the United States Attorney's office opposed plaintiff's reappointment and submitted to the Commission materials and information with respect to statements from the bench and decisions made by plaintiff over the years. This court finds, however, that the Commission was not unduly influenced by information received from present or for-

---

11. That is exactly the process to which plaintiff was relegated when the Commission rated him "qualified" for reappointment.

12. The statute does not require that the Commission afford a hearing to a judge seeking reappointment; however, in May 1976 the

Commission adopted and published regulations providing for a conference between the Commission and the judge upon the request of either. 22 D.C.Reg. (No. 45) § 2.7, at 6444 (May 19, 1976). Such a conference between the Commission and plaintiff was held in September 1975 at the instance of the Commission.

mer members of the United States Attorney's office. The Commission received and considered information, some favorable and some unfavorable, from various sources with respect to plaintiff's service as a judge. The Commission has the right and the obligation to gather information from the community with respect to a declared candidate for judicial reappointment and to weigh the views expressed. Members of the United States Attorney's office, like other citizens, may bring to the Commission's attention information they believe to be relevant to the possible reappointment of a judge of the District of Columbia. In the past, like other citizens, they had the right to present their views to the President and to Senators when a District of Columbia judge was being considered for reappointment. In order properly to perform its statutory duty of evaluating a declaring candidate's performance in office and fitness for reappointment, the Commission should welcome information from all areas of the community; information offered by individuals who have been involved in litigation before a judge may be particularly helpful if due allowance is made for possible prejudice resulting from events during the trial and the ultimate decision of the case. The evidence at trial convinces this court that such information was fairly considered by the Commission. The receipt and consideration of information submitted by present and former Assistant United States Attorneys with respect to plaintiff's service as a judge was in keeping with the Commission's statutory duties and was not in violation of the doctrine of separation of powers.

### I–B

#### (1)

Plaintiff contends that he had an expectation of continuation in office as a judge of the Superior Court which amounted to a property interest entitling him to the full panoply of due process protections during the evaluation by the Commission of his candidacy for reappointment, and that he was denied those protections. Whether plaintiff was so entitled requires a twofold analysis: did plaintiff have a property interest of which he could be deprived only after according him due process; and if so, what process was due under the circumstances. See, e. g., *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Whether plaintiff had such a property interest requires an examination of the controlling statutory provisions in the light of recent Supreme Court cases. Both before and after the adoption of the Home Rule Act, a District of Columbia judge was and is initially appointed to a fixed term by the President, by and with the advice and consent of the Senate. Until the Home Rule Act took effect, a judge of the District of Columbia who desired to continue in office had to be reappointed by the same process; he clearly had no such expectation of reappointment as amounted to a property interest. The provisions of § 433(c) of the Home Rule Act, set out in note 3 above, now require that a judge who desires to continue in office must submit to a process under which reappointment to another term may occur only if the Commission determines that the judge is, at a minimum, "qualified" for reappointment. The purpose of the evaluation by the Commission under § 433(c) is to determine whether a judge is (a) "exceptionally well qualified" or "well qualified," upon which determination his term shall be automatically extended for another full term (subject to involuntary retirement, suspension or removal); or (b) "qualified," upon which determination he may be reappointed to another term by the President by and with the advice and consent of the Senate; or (c) "unqualified," upon which determination he shall not be eligible for reappointment. The term for which plaintiff had been appointed would have expired on October 20, 1975, whatever evaluation the Commission made of his performance during his existing

term and of his fitness for reappointment to another term.

Whether the provisions of § 433(c) have given a sitting judge such an expectation of continuation in office as amounts to a property interest under the Fifth Amendment has not been heretofore decided, nor are there any closely analogous cases. Based on such recent cases as *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Field v. Boyle*, 503 F.2d 774 (7 Cir. 1974),[13] this court concludes: that plaintiff did not have a property interest which entitled him to the full panoply of due process; but that he did have an interest in possible reappointment which entitled him to a thorough and fair evaluation of his candidacy by an impartial Commission; and that plaintiff was entitled to such process as would insure that the Commission's evaluation of his candidacy for reappointment was thorough and fair.[14]

■ The process which must be afforded by the Commission in connection with the evaluation of a candidate for reappointment as a judge is less than the full panoply of protections accorded in a criminal trial. For example, a candidate for reappointment need not be given the right to examine or cross-examine every person who gave any information, favorable or unfavorable, to the Commission or any of its members

with respect to the candidate's performance in office or fitness for reappointment.

■ The Commission notified plaintiff of the areas of its concern, advised him of the cases and opinions giving rise to such concern, furnished to his counsel transcripts of most of those cases and copies of those opinions, informed plaintiff of the particular Canons of the Code of Judicial Conduct which the Commission believed to be pertinent, afforded plaintiff a conference lasting a full day, at which he was accompanied by his counsel and others, and gave plaintiff and his counsel an opportunity to respond to the Commission's inquiries and concerns with respect to the transcripts and opinions. After the Commission's consideration of plaintiff's candidacy for reappointment and its report to the President, the Commission adopted and published regulations relating to its functions in evaluating judges seeking reappointment. See 22 D.C.Reg. (No. 45) 6441–46 (May 19, 1976). Those regulations provided that a conference be held at the request of either the judge or the Commission and that the Commission will, whenever there is information raising a substantial doubt that a judge is at least "well qualified" for reappointment, inform the judge of the nature of the questions raised and provide to the judge in summary form the basis for such doubt, to the extent feasible and subject to certain confidentiality requirements. 22 D.C.Reg. (No. 45) §§ 2.7 & 2.8, at 6444–45 (May 19, 1976). The Commission followed substantially

---

13. Cf. *Mt. Healthy City School District Board of Education v. Doyle*, ⸺ U.S. ⸺, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

14. Plaintiff also contends that the Commission's determination that he was "qualified" for reappointment and its failure to determine that he was "exceptionally well qualified" or "well qualified," together with the Commission's statement in its written evaluation of plaintiff's fitness for reappointment submitted to the President that there were areas of plaintiff's conduct "which reflect adversely upon his fitness for reappointment," have attached a stigma to his reputation which amounts to an intrusion upon a liberty interest. This court does not agree. First, the Commission also stated in its report to the President that plaintiff's ser-

vice in office "has been marked by productive, energetic and creative judicial activity reflecting favorably upon his fitness for reappointment", and that those positive attributes made him qualified for reappointment. Notwithstanding the alleged stigma, the President nominated plaintiff for reappointment based on the Commission evaluation, and the Senate Committee on the District of Columbia thereafter voted unanimously to report plaintiff's nomination favorably to the full Senate. See Senate Executive Report No. 94–32, 94th Cong., 2d Sess., August 27, 1976. Moreover, injury to reputation alone is not sufficient to invoke the guarantees of procedural due process. *Paul v. Davis*, 424 U.S. 693, 706, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

those procedures when it was considering plaintiff's candidacy for reappointment.[15]

The Commission's initial responsibility under § 433(c) is to gather relevant information regarding a judge's fitness for reappointment from various segments of the community. Plaintiff has not shown that the Commission limited its consideration to matters unfavorable to him. The Commission requested and received information with respect to plaintiff's service as a judge from several areas of the legal community, including (1) the Chief Judges of the Superior Court and the Court of Appeals of the District of Columbia, (2) the United States Attorney's office, (3) the Public Defender Service, and (4) the Legal Aid Society. Testimony received at trial established that the Commission considered all the information it received, including plaintiff's own statements during the conference with the Commission, plaintiff's twelve-page written statement submitted to the Commission at that conference, and a letter from plaintiff to the Commission reviewing and highlighting his judicial career.[16] If the Commission were restricted to receiving and considering only that information presented to it in conformance with formal evidentiary rules at a trial-type hearing, the public interest would be ill-served; a less-than-thorough evaluation of fitness for reappointment

would inevitably result. Congress did not require that a judge be afforded a formal hearing. This court concludes that the procedure which the Commission followed during the evaluation process adequately safeguarded plaintiff from arbitrary governmental action.[17]

Plaintiff also contends that the absence of published standards by which the Commission intended to evaluate his candidacy for reappointment requires this court to hold that the Commission's determination with respect to his candidacy was arbitrary and in violation of due process. It is true that the Commission did not publish prior to its evaluation of plaintiff's candidacy detailed standards for placing a judge into one of the four statutory categories.[18] The evidence shows, however, that the Commission notified plaintiff of its areas of concern, advised him of the cases and opinions giving rise to such concern and referred plaintiff to the specific Canons of the Code of Judicial Conduct which it felt were pertinent. Plaintiff was afforded an opportunity at the conference with the Commission to respond to the Commission's inquiries and concerns and to present information supporting his candidacy for reappointment. The Commission's written evaluation of plaintiff's fitness for reappointment,[19] and

15. This court does not agree with plaintiff's contention that the absence of published regulations establishing the procedures to be followed by the Commission during its evaluation of plaintiff's candidacy violated due process. So long as the Commission affords a judge seeking reappointment that process which is due, as this court concludes plaintiff was afforded, the procedures need not be published in advance.

16. The Commission's written evaluation of plaintiff's fitness for reappointment submitted to the President on September 19, 1975, set out in Appendix A to this opinion, is further evidence that the Commission received and considered information reflecting favorably upon plaintiff's fitness for reappointment.

17. Plaintiff's brief argues that "the public" had property and liberty interests that were intruded upon during the Commission's evaluation of plaintiff's candidacy for reappointment. The Due Process Clause of the Fifth Amendment provides that "[n]o *person* shall be . . . .

deprived of life, liberty, or property without due process of law." (emphasis supplied) The purpose of the clause is to protect individuals from arbitrary exercise of governmental power. It is true that the public has a concern with seeing that good judges are retained in office. The evidence in this case shows that the public interest was served by the Commission receiving and considering communications from members of the public, and giving plaintiff a fair opportunity to answer the complaints about which the Commission was concerned.

18. In May 1976 the Commission published such detailed standards, which follow those used by the ABA when rating persons under consideration for federal judicial appointments. Compare 22 D.C.Reg. (No. 45) § 2.2, at 6442 (May 19, 1976), with 87 A.B.A.Rep. 601, 604–07 (1962).

19. Set out in Appendix A to this opinion.

the testimony and other evidence presented at the trial of this case, establish that the Commission fairly considered all relevant favorable and unfavorable information it received with respect to plaintiff's candidacy. This court finds and concludes that plaintiff received adequate notice of the areas of his judicial performance about which the Commission was concerned and the standards against which his performance in office was being measured, and that the failure of the Commission to have published detailed standards for placing a judge in one of the statutory categories did not deprive plaintiff of due process.

Plaintiff's final challenge to the reappointment proceeding is that he was not afforded a hearing before an impartial tribunal, because, he claims, the Chairman of the Commission (Berliner) was biased against him. Plaintiff bases his claim of bias on (1) the fact that nine years before the Commission considered plaintiff's candidacy for reappointment, Berliner, while an Assistant United States Attorney, represented the government in a criminal case before plaintiff, and (2) plaintiff's own assertion that during the case he criticized Berliner. That case was among those cited to the Commission by someone other than Berliner and was discussed at the conference with plaintiff.

▉▉▉▉ If a party establishes that a decisionmaker has been the target of personal abuse or criticism from the party now before him, the probability of bias may be too great to permit the proceeding to take place before that decisionmaker. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Taylor v. Hayes*, 418 U.S. 488, 501–03, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *Pickering v. Board of Education*, 391 U.S. 563, 578–79 n. 2, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In this case, however, the evidence does not establish that plaintiff had a valid claim that

Berliner would be biased against him, nor does the evidence show that either Berliner or the Commission was in fact biased during the consideration of plaintiff's candidacy.[20]

Although plaintiff testified that he criticized Berliner during the earlier criminal case, Berliner testified that he considered that case to be no different from the many other cases he had tried before plaintiff, that he held nothing against plaintiff as a result of it, and that the inquiry into that matter had not been initiated by him. No transcript of the earlier case was offered in evidence in this case. The opinion on appeal vacated the judgment which Judge Halleck had entered, but does not reveal or suggest that he had said anything personally derogatory of Berliner; rather, it shows that Judge Halleck disagreed with and was critical of a policy of the office of the United States Attorney.[21] This court finds from all the evidence that plaintiff had not made any such personal criticism of Berliner as would support the claim of bias which plaintiff advances.

The testimony at the trial of this case shows that during meetings of the Commission Berliner advocated the position, which was adopted by the Commission, that a judge should be determined to be "qualified" for reappointment despite his "negative" traits, if they are offset by strong positive attributes, such as those possessed by Judge Halleck. Berliner also took the position, orally and in a memorandum to the other Commissioners, that they should not give undue weight to the number of times plaintiff was reversed on appeal, because many of the cases might properly have been consolidated. No proof of any actual bias during the evaluation of plaintiff's candidacy was developed at the trial, and this court finds from all the evidence, including the written evaluation of plaintiff submitted to the President, that the Commission, and Berliner in particular, gave a

---

**20.** For a discussion of plaintiff's claim that the pending disciplinary proceedings should be enjoined because of the bias of the Commission, see Part II–B(4)(a).

**21.** See *United States v. Foster*, 226 A.2d 164 (D.C.App.1967).

fair and impartial consideration to plaintiff's candidacy.

This court therefore concludes, for the reasons stated above, that plaintiff was accorded that process to which he was entitled in the reappointment proceeding.

(2)

 Plaintiff contends that consideration by the Commission of statements he made from the bench or otherwise in connection with his judicial duties violated his First Amendment right to freedom of speech. This court does not agree. A judge's constitutional right to say what he pleases from the bench is not without limits. The ABA Code of Judicial Conduct, adopted by the Joint Committee on Judicial Administration in the District of Columbia,[22] reflects the limits on a judge's right of free speech.[23] It would not be possible for the .Commission to fulfill its obligations under § 433(c) without considering some statements made by a judge in the course of his judicial duties. This court concludes that consideration by the Commission in the evaluation proceeding of statements plaintiff made from the bench or otherwise in the course of his judicial duties, which were offered in evidence herein, did not infringe upon his First Amendment rights.

\* \* \* \* \* \*

Plaintiff's request that this court declare void the September 1975 evaluation by the Commission of his candidacy for reappointment as a judge of the Superior Court must be denied.

**22.** See District of Columbia Courts, Annual Report 1973, p. 8.

**23.** See, e. g., *In re Rome*, 218 Kan. 198, 542 P.2d 676, 684 (1975); *In re Kelly*, 238 So.2d 565 (Fla.1970).

**24.** See *American Civil Liberties Union v. Bozardt*, 539 F.2d 340 (4 Cir. 1976), cert. denied, —— U.S. ——, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976); *Anonymous v. Association of the Bar*, 515 F.2d 427 (2 Cir.), cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Roy v. Jones*, 349 F.Supp. 315 (W.D.Pa.1972), aff'd on other grounds, 484 F.2d 96 (3 Cir. 1973).

*II Disciplinary Proceedings*

 Plaintiff raises several challenges to the disciplinary proceedings currently pending before the Commission. In response, defendants argue initially that this court should refrain from exercising jurisdiction over plaintiff's claims on grounds of comity and abstention. Defendants' arguments would be more persuasive if the proceedings were pending before a *state* disciplinary commission,[24] rather than before a disciplinary commission in the .District of Columbia. Both the abstention doctrine, see *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and the doctrine of federal equitable restraint, developed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and later cases, are based on principles of federalism, which require deference to state court proceedings in order to preserve the harmonious federal-state relations fundamental to our federal system. Those principles do not apply with the same force in the present case, and under the circumstances of this case, those doctrines do not persuade this court that it should refrain from deciding basic (and often novel) constitutional questions which have been raised in ·regard to the disciplinary proceedings pending before the Commission.

II-A

Plaintiff contends that this court should declare § 11–1526(a)(2)(C) of the D.C.Code [25] void as unconstitutionally vague and overbroad, and should enjoin defendants from proceeding against him under that subsection.[26] The Commission's "No-

**25.** Also codified in § 432(a)(2)(C) of the Home Rule Act. See note 6 above.

**26.** D.C.Code § 11–1526(a)(2) provides:

"A judge of a District of Columbia court shall also be removed from office upon affirmance of an appeal from an order of removal filed in the District of Columbia Court of Appeals by the Tenure Commission (or upon expiration of the time within which such an appeal may be taken) after a determination by the Tenure Commission of—

"(A) willful misconduct in office,

tice of Formal Proceeding" delivered to plaintiff on June 14, 1976, stated that specific alleged conduct set out in that notice would, if proved, "constitute grounds for Commission action" under that subsection, as conduct which is "prejudicial to the administration of justice or brings the judicial office into disrepute".

 A statute may be successfully challenged as vague if it does not clearly define the conduct regulated, and thus does not afford an individual fair warning of what conduct is prohibited. See, e. g., *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Moreover, a statute which clearly defines the conduct regulated may be unconstitutionally overbroad if it includes protected conduct within its prohibitions. See, e. g., *Grayned v. City of Rockford*, supra, 408 U.S. at 114, 92 S.Ct. 2294; *Zwickler v. Koota*, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). A statute is not necessarily invalid as vague or overbroad merely because it is difficult to determine whether marginal conduct falls within the statutory language. *United States v. National Dairy Products Corporation*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).

 The provisions of § 11–1526(a)(2)(C) do not stand alone. The ABA Code of Judicial Conduct has been adopted by the Joint Committee on Judicial Administration in the District of Columbia.[28] The Canons of that Code supply judges with ethical standards expected of them. Arguments in other jurisdictions that constitutional and statutory provisions for the discipline of judges were vague or overbroad have been rejected primarily on the ground that the Code of Judicial Conduct furnished sufficient specification of the judicial conduct

which warrants disciplinary action. See, e. g., *Keiser v. Bell*, 332 F.Supp. 608, 613–15 (E.D.Pa.1971); *Sarisohn v. Appellate Division, Second Department, Supreme Court of New York*, 265 F.Supp. 455, 458–59 (E.D.N. Y.1967); *In re Foster*, 271 Md. 449, 471–72, 475–78, 318 A.2d 523 (1974).[29] In the case at bar, the Commission's "Notice of Formal Proceedings," stated that plaintiff's alleged conduct would, if proved, violate Canons 2A and 3A(3) of the Code of Judicial Conduct. This court concludes that the provisions of § 11–1526(a)(2)(C) are supplemented by the Code of Judicial Conduct, and· so supplemented are not unconstitutionally vague or overbroad in violation of the Due Process Clause.

### II–B

Plaintiff's other challenges to the disciplinary proceedings currently pending before the Commission involve the conduct of the proceedings to date and the scope of the Commission's disciplinary powers. The line between what issues should properly be decided by this court, and what issues should be left for resolution by the special court under § 11–1529 of the D.C.Code on review of an order of the Commission is not sharp. Even though some of the questions decided here might have been left for decision by the Commission in the first instance and by the special court on review of a possible order of the Commission adverse to plaintiff, this court has concluded that fairness to plaintiff, to other judges who may come before the Commission, and to the public, calls for as prompt a resolution as possible of the basic questions presented by this case.

### (1)

 Plaintiff asks this court to enjoin the Commission from concluding the pend-

---

"(B) willful and persistent failure to perform judicial duties, or

"(C) any other conduct which is prejudicial to the administration of justice or which brings the judicial office into disrepute."

**28.** See District of Columbia Courts, Annual Report 1973, p. 8.

**29.** Cf. *In re Bithoney*, 486 F.2d 319, 323–25 (1 Cir. 1973).

ing disciplinary proceeding, on the ground that plaintiff's First Amendment right to freedom of speech is violated by the Commission's consideration of statements he made from the bench or otherwise in connection with his judicial duties. As was noted in Part I–B(2) of this opinion, a judge's constitutional right to freedom of speech is not without limits, and the ABA Code of Judicial Conduct, adopted by the Joint Committee on Judicial Administration in the District of Columbia, reflects most of those limits. The First Amendment does not completely insulate a judge from discipline for judicial misconduct which happens to take the form of speech.[30] The need for public confidence in and respect for the judiciary requires some reasonable limits on the freedom of a judge to say what he pleases from the bench, and this court concludes that consideration by the Commission of the three specific instances of plaintiff's conduct as a judge which were set out in the Notice of Formal Proceedings delivered by the Commission to plaintiff will not infringe upon his First Amendment rights.

### (2)

Plaintiff has argued that the disciplinary functions of the Commission represent an unconstitutional encroachment upon the independence of the judiciary of the District of Columbia in violation of the doctrine of separation of powers, and that actions of members of the office of the United States Attorney who instigated or furnished information in connection with the Commission's investigation of plaintiff's conduct also encroached upon judicial independence. Even assuming that the doctrine of separation of powers is fully applicable to the governmental structure of the Dis-

trict of Columbia, see Part I–A of this opinion, this court concludes that the doctrine has not been violated. The Commission is an independent body, designed to exercise its statutorily created disciplinary functions free from the influence of either the executive or legislative branches. Disciplinary orders of the Commission are subject to review by a special court composed of federal judges, see § 11–1529, not by either the executive or legislative branches. The evidence in this case does not show any such intrusion into the Commission's activities by present or former Assistant United States Attorneys as would indicate that the Commission has not been operating as an independent body during the pending disciplinary proceedings. This court concludes that neither the limited disciplinary powers given to the Commission in § 11–1526 nor the activities of the Commission in its proceedings against plaintiff to date encroaches upon the independence of the judiciary of the District of Columbia.

### (3)

In the June 14, 1976, Notice of Formal Proceedings delivered to plaintiff, the Commission noted that plaintiff's alleged conduct would, if proved, be contrary to his representations to the Commission at the September 16, 1975, reappointment conference that "in the future he would take great care to avoid intemperate and similar conduct". The Commission further notified plaintiff on September 21, 1976, that in connection with plaintiff's disciplinary hearing it would take official notice of the substance of those representations [31] and of the contents of a written statement submitted by plaintiff at the September 16, 1975, conference. Plaintiff contends that this court

---

**30.** See, e. g., *In re Rome*, 218 Kan. 198, 542 P.2d 676, 684 (1975).

**31.** The notice sent to plaintiff on September 21, 1976, stated that during the conference concerning his candidacy for reappointment as a judge, plaintiff "said to the Commission in substance the following:

"(a) That in some instances he had chosen his words badly but that he did not mean to demean the Court or the law.

"(b) That he had been wrong in the past but that it would not happen in the future.

"(c) That he was going to do better in the future.

"(d) That this meeting with the Commission during which his demeanor on the bench had been subject to question was a helpful experience for him."

should enjoin the pending disciplinary proceedings because they are premised upon the reappointment conference, which he contends was constitutionally defective. In Part I of this opinion, however, this court concluded that the Commission's evaluation of plaintiff's candidacy for reappointment did not violate his constitutional rights. Precisely what if any representations were made by plaintiff at the September 16, 1975 conference,[32] and whether a "breach" of such representations, if they were made, would support disciplinary action by the Commission under § 11–1526(a)(2)(C) need not be decided by this court at this time, but should instead be considered by the Commission and, if necessary, by the special court on review of a possible Commission order adverse to plaintiff. This court merely holds that consideration of the alleged representations, if found to have been made, would not violate plaintiff's constitutional rights.

(4)

Plaintiff raises three due process challenges to the impartiality of the Commission and its handling of the disciplinary proceedings to date, contending that this court should enjoin the Commission from further consideration of disciplinary action against him. He argues (a) that the Commission and its individual members are so biased against him that he cannot receive impartial consideration from the Commission, (b) that the Commission has breached the confidentiality requirements found in both § 11–1528(a) of the D.C.Code and the Commission's own rules, and (c) that a combination of investigatory, prosecutorial and adjudicatory functions in the Commission creates an unconstitutional risk of bias in the pending disciplinary proceeding.

■ (a) In Part I–B(1) of this opinion it was noted that the probability of bias in a decisionmaker may be too great to permit a proceeding to take place before that decisionmaker. This court finds, however, that neither the Commission nor any of its members is biased against plaintiff. This court has already concluded that the Commission accorded plaintiff a fair and impartial evaluation of his candidacy for reappointment. His present contention is that the Commission, through its special counsel, has indicated a predisposition to impose a sanction on plaintiff in the form of a public reprimand for his alleged conduct set out in the Notice of Formal Proceedings. Plaintiff testified at trial that the Commission's special counsel informed him of such a predisposition to reprimand at a meeting with plaintiff on September 17, 1976. The special counsel testified, however, that he never told plaintiff that the Commission was predisposed to impose any particular sanction, and that his September 17 meeting with plaintiff was initiated by plaintiff's efforts to resolve informally the matter pending before the Commission. This court finds from all the evidence that one or more members of the Commission or its counsel has expressed the belief that the Commission has the power to reprimand a judge,[33] but the court further finds that neither the Commission nor any of its members either has or has indicated a predisposition to impose a particular sanction on plaintiff, or to impose any sanction at all.

(b) Section 11–1528(a) of the D.C.Code provides that a disciplinary hearing before the Commission, the record of such a hearing, and all papers filed in connection therewith, shall be confidential unless otherwise authorized by the judge who is the subject of the hearing. The Commission has promulgated rules which provide for the confidentiality of disciplinary hearings and of information received or papers filed in connection with such hearings,[34] and for having

---

32. Plaintiff testified at trial that he had "no recollection" of making the representations of which the Commission informed him they would take judicial notice.

33. Whether the Commission has that power is discussed in Part II–B(5) of this opinion.

34. 22 D.C.Reg. (No.18) § 1.10, at 2209–10 (Nov. 4, 1975), provides:

"*Confidentiality*

"(a) The only Commission records available for public inspection shall be forms reporting financial data required by D.C.Code § 11–

witnesses swear that they will keep confidential the existence of such proceedings.[35] Plaintiff contends that the Commission breached these confidentiality requirements by: (i) revealing to a reporter for the Washington Post, directly or indirectly, the fact of the proceedings against plaintiff, which was the subject of an article in that paper; and (ii) by the failure of its special counsel to have all individuals with whom he spoke concerning the charges against plaintiff swear not to disclose the fact that they had spoken with him.

(i) This court finds, after considering all the evidence presented at trial, that neither any member of the Commission nor its special counsel was the source of the information which formed the basis for the article in the Post.

■ (ii) With respect to plaintiff's contention that the Commission's special counsel violated a Commission rule by not swearing to secrecy the individuals he interviewed concerning the charges against plaintiff, this court disagrees with plaintiff's interpretation of that rule. The rule requires that "every witness in every investigation or other proceeding under these rules shall swear or affirm . . . not to disclose the existence of the proceeding or

the identity of the judge involved." That language does not expressly require that each person to whom the special counsel speaks while looking into a complaint about a judge received by the Commission must be formally sworn to confidentiality; the rule is framed in terms of "witnesses". It would not be practicable for the special counsel to require everyone with whom he has contact to make a formal oath or affirmation. The special counsel testified that he did inform those to whom he spoke that the investigation of plaintiff was confidential. This court concludes that plaintiff is not entitled to an injunction against the pending disciplinary proceeding because of the failure of the Commission's special counsel to have each individual to whom he spoke formally swear or affirm not to disclose that they had been contacted concerning a Commission inquiry into plaintiff's conduct.

■ (c) Plaintiff contends that the Commission cannot be impartial on the ground that it investigates and prosecutes, as well as adjudicates, disciplinary charges against a judge. The Commissioners necessarily must receive complaints, praise or other comments from members of the public; the Commissioners may question wit-

1530(a)(2) and (7) referred to in § 1.9 of these regulations.

"(b) The Commission may, as it considers appropriate from time to time, receive and investigate information or complaints from individuals or organizations. The source of such information or complaint shall not be disclosed, except with the consent of the individual or organization or as may be required on subsequent prosecution of a witness for perjury or on judicial review of a decision of the Commission, but only to the extent required for such prosecution or review.

"(c) Hearings before the Commission, the record thereof, and all papers filed in connection with such hearings shall be confidential, except that they shall be disclosed, to the extent required, on prosecution of a witness for perjury or on judicial review of a decision of the Commission.

"(d) A judge whose conduct or health is the subject of a hearing before the Commission may authorize waiver of confidentiality of the hearing, the record thereof and papers filed in

connection therewith, except for the identity of an informant or complainant.

"(e) Upon a determination after a hearing that no grounds for action against a judge exist, the Commission shall notify the judge of this determination and inquire whether he desires the Commission to make public disclosure of appropriate information pertaining to the nature of the investigation carried out by the Commission, its hearing, findings, determination or other facts related to its proceeding regarding his conduct or health. If the judge, in writing, requests such disclosure, the Commission shall make such information public, except for the identity of an informant or complainant."

**35.** 22 D.C.Reg. (No. 18) § 1.4, at 2204 (Nov. 4, 1975), provides in part:

"(b) Every witness in every investigation or other proceeding under these rules shall swear or affirm to tell the truth and not to disclose the existence of the proceeding or the identity of the judge involved unless or until the proceeding is no longer confidential under these rules."

nesses, including the judge before them, at the hearing just as a trial judge may in court. The evidence presented in this case was that the special counsel appointed by the Commissioners conducted the investigation of plaintiff's alleged conduct and then presented the case against plaintiff to the Commission, and this court assumes that the special counsel will not participate in any of the Commission's deliberations or have a vote in the final decision by the Commission. Even though the Commissioners themselves may be involved in some parts of the investigation and prosecution, as well as being solely responsible for the adjudication, this court concludes that such a combination of functions does not violate due process.

The Supreme Court has recently addressed a similar issue in *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), where the Court said:

"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."

In *Withrow v. Larkin*, the Court held that the combination of investigatory and adjudicatory functions in a medical examining board empowered to issue reprimands, suspend licenses and institute actions to revoke licenses did not make the board biased in violation of an individual's due process right to a fair hearing before an impartial tribunal. Challenges in other jurisdictions to the

combination of investigatory, prosecutorial and adjudicatory functions in judicial disciplinary bodies have been rejected by the courts. E. g., *Roy v. Jones*, 349 F.Supp. 315, 322 (W.D.Pa.1972), aff'd on other grounds, 484 F.2d 96 (3 Cir. 1973); *Keiser v. Bell*, 332 F.Supp. 608, 617–19 (E.D.Pa.1971); *In re Rome*, 218 Kan. 198, 542 P.2d 676, 683–84 (1975); *In re Hanson*, 532 P.2d 303, 306 (Alaska 1975); *In re Diener*, 268 Md. 659, 677–79, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). In the case at bar, the evidence does not show that the Commission or any of its individual members is actually biased, and this court concludes that the combination of investigatory, prosecutorial and adjudicatory powers in the Commission does not violate due process.

(5)

The disciplinary functions of the Commission are set out in § 11–1526 of the D.C. Code. The only express remedial powers granted to the Commission in that section are removal and suspension of a judge from all or part of his judicial duties pending a hearing or an appeal from an order of removal.[36] Plaintiff contends that the Commission has indicated a predisposition to impose a sanction on him in the form of a public reprimand, and that such a sanction is beyond the statutory powers granted to the Commission by Congress.

In Part II–B(4)(a) of this opinion, this court found that "neither the Commission nor any of its members either has or has indicated a predisposition to impose a particular sanction on plaintiff, or to impose any sanction at all"; however, this court further found that "one or more members of the Commission or its counsel has expressed the belief that the Commission has the power to reprimand a judge". In a preface to the amendment of the Commission's rules and regulations governing its disciplinary responsibilities, the Commission

---

**36.** Sec. §§ 1526(a) & (c). The Commission also has the power under § 1526(b) to retire a judge upon a determination that the judge suffers from a serious mental or physical disability.

Section 11–1521, which establishes the Commission, provides only that the Commission "shall have power to suspend, retire, or remove a judge of a District of Columbia court."

has observed that "where provisions of the statutes refer to 'removal' of a judge it construes 'removal' to mean formal public reprimand as well as removal, on the ground that 'the greater . . . impliedly includes the lesser' ". 22 D.C.Reg. (No. 18) 2201 (Nov. 4, 1975), quoting from *In re Diener*, 268 Md. 659, 683, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). The Commission's rules governing the issuance and judicial review of orders expressly refer to orders of reprimand. See D.C.Reg. (No. 18), §§ 1.20–.21, at 2217–18 (Nov. 4, 1975). Defendant Berliner testified in this case that it is his belief, and that of the Commission as a whole that the Commission has the power to reprimand judges. The fact that the Commission's special counsel met with plaintiff concerning possible resolution of the charges through an acceptance by plaintiff of a sanction less than removal is further support for the conclusion that the Commission is operating on the assumption that it possesses the power to reprimand.

Whether this court should decide at this time the scope of the Commission's disciplinary powers is a difficult question. The Commission has not yet attempted to impose any sanction on plaintiff, and there is a possibility that resolution of the issue of the scope of the Commission's powers will not be a prerequisite to the conclusion of the pending disciplinary proceedings with respect to plaintiff. For example, if the Commission were to decide that plaintiff's conduct warrants removal under the statute and were to order such removal, the issue whether the Commission has the power to order a public reprimand would become moot; that issue would also be mooted if the Commission were to conclude that plaintiff's conduct is not serious enough to warrant any disciplinary sanction whatsoev-

er. Moreover, if the Commission were to decide to order a public reprimand of plaintiff, judicial review by the special court of that decision, and of the power of the Commission to issue such an order (see § 11–1529(d)(3)), is available. . Nevertheless, because the Commission is conducting its pending proceedings against plaintiff on the assumption that it has the power to order a public reprimand, and because it is desirable for the future guidance of the Commission and of the judges of the District of Columbia, this court believes that the issue of the scope of the Commission's disciplinary powers should be resolved in this case.

■ The only statutory grounds for removal of a judge of a local court of the District of Columbia are those set out in § 11–1526(a).[37] This court is convinced and holds that before the Commission may impose any sanction on a judge, it must determine that the judge has engaged in conduct which falls within one of the statutory grounds for removal.[38]

\* . \* \* \* \* \*

With that important conclusion in mind, § 11–1526(a)(2) is susceptible of five constructions with respect to the sanctions which the Commission may impose:

If the Commission makes a determination of either

"(A) willful misconduct in office,

"(B) willful and persistent failure to perform judicial duties, or

"(C) any other conduct which is prejudicial to the administration of justice or which brings the judicial office into disrepute",

of sufficient seriousness that the conduct would warrant removal from office,

(*Possible construction # 1*) the Commission must order removal of the judge; or

---

**37.** For purposes of this discussion, the grounds for removal will be limited to those set out in § 11–1526(a)(2), quoted in note 26 above; the ground of conviction of a felony set out in § 11–1526(a)(1) will not be discussed in this opinion.

**38.** Unless and until Congress amends the pertinent statutory provisions, the Commission

should not institute any disciplinary investigation or proceeding unless the Commission believes that the alleged conduct, if proved, may warrant removal from office on the grounds set out in the statute. The Commission's rules appear to recognize this limitation. See 22 D.C.Reg. (No. 18) § 1.12, at 2210–12 (Nov. 4, 1975).

(*Possible construction # 2*) the Commission may either order removal of the judge or, if it decides that under all the circumstances the judge should not be removed, it must dismiss the case without making its decision public unless the judge consents; or ·

(*Possible construction # 3*) the Commission may either order removal of the judge or, if it decides that under all the circumstances the judge should not be removed, it may either (a) dismiss the case without making its decision public unless the judge consents, or (b) if it determines that the judge should be reprimanded it may issue and make public an order of reprimand; or

(*Possible construction # 4*) the Commission may either order removal of the judge or, if it decides that under all the circumstances the judge should not be removed, it may either (a) dismiss the case without making its decision public unless the judge consents, or (b) if it determines that the judge should be reprimanded it may reprimand or warn the judge in camera, but may not make such decision or action public unless the judge consents; or

(*Possible construction # 5*) the Commission may either order removal of the judge or, if it decides that under all the circumstances the judge should not be removed, it may either (a) dismiss the case without making its decision public unless the judge consents, or (b) if it determines that the public interest would be best served by a public announcement of the decision and an explanation of why the judge is not being removed, it may in the sound exercise of its discretion make such a public statement.

\* \* \* \* \* \*

No judicial precedent which has been cited or found points clearly to the proper resolution of this problem. There is no binding authority, and the few cases from other jurisdictions deal with provisions which are differently worded.[39] At most, they support a general principle that in construing statutory or constitutional provisions relating to judicial discipline, the power to impose a greater sanction includes the power to impose a lesser sanction.

██ One point is clear. The provisions of § 11–1526 require the conclusion that Congress did not intend the Commission to call judges before it for venial offenses, but only for such flagrant violations of the Code of Judicial Conduct as would warrant removal from office. A single instance of such misconduct may be so serious as to warrant the imposition of that sanction; on the other hand, there may be cases where such misconduct is matched by affirmative judicial qualities which make a Draconian conclusion inappropriate. This court must therefore decide—happily subject to review on appeal—whether in such a case the only choices available to the Commission are removal from office or dismissal of the charges without any. public statement. This court is satisfied that even if the available choices are so limited and the Commission concludes that the judge should not be removed from office, the Commission may call the judge before it and warn him in

---

**39.** The highest courts of two states have recently recognized the power to censure a judge, on the ground that the greater power to remove includes the lesser power to censure. *In re Dupont*, 322 So.2d 180, 183 (La.1975); *In re Diener*, 268 Md. 659, 683, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). In *Dupont*, the state constitutional provision expressly mentioned only removal from office or involuntary retirement; the court concluded that a judicial disciplinary commission's powers included the lesser power to recommend censure. The Maryland provisions at issue in *Diener* were somewhat more complicated. The state constitution expressly gave the Court of Appeals of Mary-

land the power to remove a judge from office or to censure him; the constitutional provision governing the Commission on Judicial Disabilities only mentioned the power of the Commission to recommend to the Court of Appeals the removal or retirement of a judge. A rule dealing with procedure before the Commission, adopted by the Court of Appeals, included the power of the Commission to recommend censure as well as removal or retirement. In *Diener*, the Commission had recommended the censure of two judges, but the Court of Appeals removed the judges; in the course of its opinion, the Court stated that the grant to the Commission of the greater power to remove impliedly included the lesser power to censure.

camera that a similar offense in the future may warrant removal.

The difficult question is whether the public is entitled to know what the Commission has done. If, as may often happen, the media has brought to the attention of the public the incident or incidents which gave rise to the charge, it is ordinarily desirable that the public know the decision of the Commission and the reasons therefor. Congress has provided in § 11–1528(b) that if the Commission concludes that *no grounds* for removal exist, the Commission

"* * * shall notify the judge and inquire whether he desires the Commission to make available to the public information pertaining to the nature of its investigation, its hearings, findings, determinations, or any other fact related to its proceedings regarding his health or conduct. Upon receipt of such request in writing from the judge, the Commission shall make such information available to the public."

No provision with respect to confidentiality has been made, however, for the possibility that the Commission might determine that although grounds for removal do exist, under all the circumstances removal should not be ordered. It is the lack of such a provision which presents the troublesome question now under consideration. The legislative history of the Court Reorganization Act does not indicate that Congress even contemplated the possibility that the Commission might reach that conclusion. This court believes that if the Commission does reach that conclusion, the wisest course is to leave to the discretion of the Commission the decision whether the purposes of the statute will be better served by a public explanation of the reason for the decision or by silence. If the Commission decides that the judge should be removed, that conclusion will inevitably be made public. If the Commission decides that he should not be removed, and if no statement of any sort is made, the public will not know whether the Commission concluded that the incidents which form the basis of the charges (a) did not occur, or (b) were considered by the

Commission not to be sufficiently serious to fall within the language of § 11–1526(a)(2), or (c) were found to have occurred and to fall within the language of § 11–1526(a)(2) but to be offset by the judge's affirmative judicial qualities.

For the reasons stated above, this court concludes that the Commission may, in its discretion, make public the fact that it has determined that although grounds for removal of a judge exist, removal will not be ordered, and the reasons for that determination. The statute does not expressly preclude the Commission from making public such a determination, and the public has a real interest in knowing how the Commission is treating charges of misconduct brought against a judge which are serious enough to permit removal. This court also concludes, however, that because of the publicity already given to both the instant case and the Commission's proceedings in regard to plaintiff, the wisest course is to require that if the Commission should determine that grounds for removal of plaintiff exist, but that under all the circumstances plaintiff should not be removed from office, no public statement to that effect shall be made (regardless of whether the Commission also concludes that its decision and the reasons therefor should be made public), unless (a) plaintiff authorizes that a public statement be made, or (b) the judgment which will be entered in this case is affirmed on appeal, or (c) the time for taking such an appeal has elapsed.

(6)

 Plaintiff was entitled to due process safeguards during the disciplinary proceedings before the Commission greater than the process to which he was entitled in connection with the evaluation of his candidacy for reappointment. Section 11–1527 of the D.C.Code establishes procedures to be followed by the Commission during an investigation of a judge's conduct and at a hearing on charges of misconduct. The Commission rules elaborate upon the procedures required during such investigations and formal proceedings. See 22 D.C.Reg. (No. 18) §§ 1.11–.19, at 2210–17 (Nov. 4,

1975). Whether the Commission complied with these statutory and regulatory provisions, and whether due process requires further safeguards which were not afforded to plaintiff by the Commission, are obviously important questions. This court concludes, however, that review of the disciplinary hearing presently before the Commission should not be undertaken by this court at this time. Rather, it is for the Commission in the first instance, and for the special court under § 11–1529 on review of an order of the Commission, to determine the due process safeguards to which plaintiff was entitled during the disciplinary proceedings, in light of both the Constitution and the statutory provisions, and to determine whether plaintiff was afforded such process as was due.

### APPENDIX A

Written Evaluation of Judge Halleck's performance during his term of office and fitness for reappointment to another term, submitted by the Commission to President Ford:

"September 19, 1975

"The District of Columbia Self-Government and Governmental Reorganization Act, P.L. 93–198, 87 Stat. 774, Sec. 433(c) provides as follows:

[Set out in full in note 3 above.]

"The terms 'exceptionally well qualified', 'well qualified', 'qualified' and 'unqualified' do not lend themselves to easy definition.

"The Commission would reserve the term 'exceptionally well qualified' for those few judges whose work product, dedication, demeanor, restraint, efficiency and legal scholarship are preeminent on the Bench. 'Well qualified' signifies a judge who accomplishes with distinction the judicial function in a manner which consistently reflects credit on the judicial system. To be 'qualified' a judge must at least satisfactorily perform his or her assigned duties or be one whose strong positive attributes are materially offset but not overborne by negative traits. 'Unqualified' signifies that the judge is unfit for judicial service.

"The term of Charles W. Halleck, a Judge of the Superior Court of the District of Columbia, expires on October 20, 1975. He has duly filed a declaration of candidacy for reappointment.

"The Commission acknowledges the cooperation which it received from Judge Halleck. In connection with his declaration of candidacy for reappointment, he submitted a lengthy statement of his judicial philosophy and the contribution which he believed had been made by him during his tenure. He also submitted a number of his opinions on a wide range of legal issues. The Commission requested, and received, a full medical report on his health. He appears to be in good health. In addition, Judge Halleck appeared before the Commission accompanied by counsel, and discussed at length freely and frankly, his views regarding the areas of concern raised by the Commission and other matters that he deemed pertinent.

"The Commission recognized the duty of a judge to reexamine established doctrine in the light of changing mores and scientific knowledge when novel constitutional issues are presented. A judge should rule in accordance with his conscience and precedent as best he can. The Commission has wholly disregarded objections raised by some who disagree with Judge Halleck's viewpoint expressed through this process in well reasoned opinions. It is not the function of this Commission to intrude on the independence of the judiciary.

"Judge Halleck's record, including but not limited to the material supplied by him, exhibits his concern for the constitutionality of statutes and proper enforcement of the law in the District of Columbia. Moreover, a number of the opinions authored by Judge Halleck display impressive research and legal scholarship. To his credit, he writes opinions more frequently and more fully than do most other judges on his court. In sheer volume of cases disposed of, he has made an enviable record. We com-

mend his success in attacking and reducing backlogs of pending cases. We regard with special approval his demand for a high standard of competence on the part of attorneys appearing before him, and his effort to achieve efficiency in the functioning of the administrative system in criminal matters. He has been particularly conscientious in the vital area of sentencing. He has been fearlessly independent.

"In summary, much of Judge Halleck's tenure has been marked by productive, energetic and creative judicial activity reflecting favorably upon his fitness for reappointment.

"Unfortunately, Judge Halleck's record also displays patterns of conduct in several basic areas which reflect adversely upon his fitness for reappointment.

"These areas are as follow:

1. He has used his courtroom to criticize and disparage fellow members of the judiciary including the District of Columbia Superior Court, the District of Columbia Court of Appeals and the United States District Court for the District of Columbia.

2. He has been impatient, undignified and discourteous in his treatment of litigants, attorneys and witnesses, subjecting them to harassment, sarcasm and ridicule.

3. He has interfered with the conduct of trials, denying parties their full right to be heard, in a number of instances requiring that cases be reinstituted and retried after reversal by the Court of Appeals.

4. He has improperly attempted to dispose of cases in such a way as to achieve a preconceived result while impeding or precluding appellate review.

5. He has inquired into the personal and sexual conduct and attitudes of individuals appearing before him although such inquiry had no bearing on any judgment he was required to make.

"The Commission considers the foregoing conduct to be violations of Canon Two A and Canon Three A(2), (3) and (4) of the Code of Judicial Conduct.

"In considering the qualification and fitness of a sitting judge special attention must be paid to the manner in which the judge conducts his day to day business in open court. In large metropolitan courts such as the Superior Court, judges confront overloaded dockets, inadequate facilities, insufficient supporting help and must frequently deal with inexperienced or ill prepared lawyers and other frustrating conditions. If a judge permits these conditions to undermine his necessary restraint and impartiality he serves the administration of justice badly and if he cannot place his exasperations under control he should not remain in office. Litigants, witnesses, lawyers, court personnel and others present in court soon lose respect for justice when a judge interjects his personal views unduly into litigation or resorts to sarcasm, banter, rudeness and other unjudicial conduct. An atmosphere of prejudice and favoritism is created which undermines the integrity of the system.

"In spite of the substantial negative aspects of Judge Halleck's judicial performance, his strong positive attributes lead us to determine that he is 'qualified' for reappointment."

[Signed by all members of the Commission with copy to Judge Halleck.]

## ON MOTION TO RECONSIDER AND AMEND THE JUDGMENT

On January 26, 1977, this court filed its opinion in this case, and on February 3, 1977, entered a judgment order giving effect to the conclusions in that opinion. Plaintiff has now filed a motion, pursuant to Rule 59, F.R.Civ.P., asking the court to reconsider and amend the judgment by enjoining the disciplinary proceeding currently pending before the District of Columbia Commission on Judicial Disabilities and Tenure, which this court had declined to do in its opinion and judgment order. Defendants have filed an opposition to plaintiff's motion.

Plaintiff's present contention is that the scheme for judicial review of Commission orders created by D.C.Code § 11–1529 (1973) is unconstitutional.[1] Under § 11–1529, a judge aggrieved by an order of removal or retirement filed by the Commission may seek review of that order by filing notice of appeal with the Chief Justice of the United States, who shall convene a special court from among the judges of the United States Court of Appeals for the District of Columbia Circuit and the United States District Court for the District of Columbia. The special court is statutorily empowered by § 11–1529(d) to set aside Commission orders found to be—

"(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

"(2) contrary to constitutional right, power, privilege, or immunity;

"(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

"(4) without observance of procedure required by law; or

"(5) unsupported by substantial evidence."

Under § 11–1529(f), "[d]ecisions of the special court shall be final and conclusive". There is no specific statutory provision dealing with review of decisions of the special court.

Plaintiff contends that insofar as § 11–1529 makes decisions of the special court on constitutional issues "final and conclusive", it is an unconstitutional limitation imposed by Congress on the appellate jurisdiction of the Supreme Court. He further contends that by designating the Chief Justice to convene the special court, Congress has exceeded its Art. I, § 8, cl. 17 power to legislate for the District of Columbia and has imposed "Article I Responsibilities Upon the Supreme Court", in violation of the Constitution.

(1)

The scope of the power of Congress to limit the appellate jurisdiction of the Supreme Court under the exceptions and regulations clause of Art. III, § 2 of the Constitution[2] is a subject of dispute among commentators, although there is little judicial authority bearing directly on the question. For two reasons, however, the issue of the power of Congress to limit the appellate jurisdiction of the Supreme Court need not be decided by this court at this time.

A threshold question is whether plaintiff's motion presents a justiciable case or controversy. A case may not be ripe for decision, and therefore may not be justiciable, if it involves uncertain or contingent future events that may not occur. In a challenge to a legislative enactment, the plaintiff must have suffered, or be immediately threatened with, injury resulting from the application of the legislative enactment to him; a hypothetical threat is not enough. See *National Student Association v. Hershey*, 134 U.S.App.D.C. 56, 412 F.2d 1103, 1110–11 (1969). The Supreme Court has recently reaffirmed the

"established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining, a direct injury as the result of that action * * *"

*Laird v. Tatum*, 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972), quoting from *Ex parte Levitt*, 302 U.S. 633, 634, 58

---

1. The only reference to such a point in the papers heretofore filed by plaintiff was in a footnote to a lengthy memorandum of law filed on November 10, 1976. The point was not pressed in oral argument.

2. Article III, § 2 of the Constitution provides in pertinent part:

"In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make."

S.Ct. 1, 82 L.Ed. 493 (1937); see also *Finley v. Hampton*, 154 U.S.App.D.C. 50, 473 F.2d 180, 184 (1972). In the present case there is considerable doubt whether plaintiff has presented a judicially cognizable challenge to § 11–1529. The provisions he challenges will be applicable to him only if (1) the Commission files an order adverse to him, thus giving rise to possible review under § 11–1529; (2) he files an appeal from the Commission order; (3) the special court finds against him; and (4) he seeks an appeal from the decision of the special court. Moreover, the specific issue plaintiff raises herein will arise only if he has presented a constitutional question to the special court and the court decides that question adversely to him. The probability of these contingencies all occurring is speculative at this time. It is very doubtful whether plaintiff has met the requirement that "he has sustained or is immediately in danger of sustaining a direct injury" as a result of application to him of the challenged provision of § 11–1529.

■ Even assuming that plaintiff has presented an issue of sufficient ripeness to make a decision at this time appropriate, this court does not agree with plaintiff that § 11–1529(f) constitutes an attempt by Congress to limit the appellate jurisdiction of the Supreme Court. The language of § 11–1529(f) merely states that decisions of the special court are "final and conclusive". While the statute does not expressly provide for direct appeal to the Supreme Court or for review by writ of certiorari, compare 28 U.S.C. § 1254, this court does not believe that § 11–1529(f) should be construed as an attempt to preclude Supreme Court review of decisions of the special court with respect to constitutional questions. The words "final and conclusive" do not mean that the Supreme Court cannot issue an appropriate writ to bring before the Court a decision of the special court. While, as a result of *Durousseau v. United States*, 10 U.S. (6 Cranch) 307, 3 L.Ed. 232 (1810), the power of the Supreme Court to issue the extraordinary writs of mandamus or common law certiorari must be founded in some statute,

as well as being authorized by the Constitution, the All Writs Act, 28 U.S.C. 1651(a), would be sufficient authorization for the Supreme Court to entertain a petition for an appropriate writ if plaintiff is ever in a position to seek review of a decision of the special court. See generally *Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 111–17, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970) (Harlan, J., concurring); *In re 620 Church Street Building Corp.*, 299 U.S. 24, 26, 57 S.Ct. 88, 81 L.Ed. 16 (1936). The Supreme Court is not powerless to determine the scope of its own jurisdiction.

### (2)

■ Plaintiff also contends that the provision in § 11–1529(b) that the Chief Justice convene a special court imposes "purely local, or Article I, responsibilities upon the Supreme Court", and that this court should therefore declare that provision to be unconstitutional. Plaintiff does not challenge the function of the special court itself, which is to be convened from "among active or retired judges of the United States Court of Appeals for the District of Columbia Circuit and the United States District Court for the District of Columbia". Those judges are Article III judges, but the Supreme Court has held that they can be given some administrative responsibilities related to the government of the District of Columbia. See *O'Donoghue v. United States*, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356 (1933). The Chief Justice is an appropriate person to designate the members of the special court. The Chief Justice has in the past been given responsibility to designate from among Article III judges the members of the Emergency Court of Appeals, see Act of Jan. 30, 1942, ch. 26, § 204(c), 56 Stat. 23, and the members of the Temporary Emergency Court of Appeals, see Act of Dec. 22, 1971, Pub.L.No. 92–210, § 211(b), 85 Stat. 743, reproduced in the note to 12 U.S.C. § 1904 (Supp.1976).

Plaintiff's motion for reconsideration and amendment of the judgment entered in this case is hereby denied.