George Francis BASON, Jr., Plaintiff,

v.

**JUDICIAL COUNCIL OF the DISTRICT OF COLUMBIA CIRCUIT, et al., Defendants.**

Civ. A. No. 88–0242.

United States District Court,
District of Columbia.

Feb. 5, 1988.

745

Joseph F. Cunningham, Joseph F. Cunningham & Associates, Washington, D.C., for plaintiff.

John C. Cleary, Asst. U.S. Atty., Washington, D.C., for defendants.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter now comes before the Court on plaintiff's motion for a temporary restraining order.[1] In consideration of the motion, defendants' opposition thereto, and the presentation by counsel at the hearing held on February 3, 1988, plaintiff's motion is denied.

### I. Background

Prompted in part by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("Act" or "1984 Act"), and restructured the selection and appointment procedures for United States bankruptcy judges. Ultimate authority for appointing bankruptcy judges is vested in the Judges of the Court of Appeals for the Circuit in which the Bankruptcy Court is located. *See* 28 U.S. C. § 152(a)(1).[2] In section 120 of the 1984 Act, Congress directs the Courts of Appeals to select "a person whose character, experience, ability, and impartiality qualify such person to serve in the Federal judiciary." Section 120(a)(1) (codified at 28 U.S.C. § 152 note).

To aid the Courts of Appeals in fulfilling this important responsibility, Congress delegated the screening function to the Judicial Councils for each Circuit.[3] The Judicial Councils "shall assist the Court of Appeals by evaluating potential nominees and by recommending to such court for consideration for appointment to each vacancy on the bankruptcy court persons who are qualified to be bankruptcy judges under regula-

1. Plaintiff filed this action on February 1, 1988, and on that same date, plaintiff's application for a temporary restraining order was brought to this Court, acting in a motions capacity.

2. If a majority of the Judges of the Court of Appeals cannot agree upon one candidate, the

Chief Judge is authorized to make the appointment. *See* 28 U.S.C. § 152(a)(3).

3. This Circuit's Judicial Council is composed of the twelve active Judges of the Court of Appeals and six Judges of the District Court. *See* 28 U.S.C. § 332.

tions prescribed by the Judicial Conference of the United States." The Act also directs that, before transmitting the names of the "best qualified" candidates to the Court of Appeals, the Judicial Council:

shall have determined that

(1) public notice of such vacancy has been given and an effort has been made, in the case of each such vacancy, to identify qualified candidates, without regard to race, color, sex, religion, or national origin,

(2) such persons are members in good standing of at least one State bar, or the District of Columbia bar, and members in good standing of every other bar of which they are members,

(3) such persons possess, and have a reputation for, integrity and good character,

(4) such persons are of sound physical and mental health,

(5) such persons possess and have demonstrated commitment to equal justice under law,

(6) such persons possess and have demonstrated outstanding legal ability and competence, as evidenced by substantial legal experience, ability to deal with complex legal problems, aptitude for legal scholarship and writing, and familiarity with courts and court processes, and

(7) such persons' demeanor, character, and personality indicate that they would exhibit judicial temperament if appointed to the position of United States bankruptcy judge.

Section 120(c).

The Judicial Council, in turn, may appoint a Merit Selection Panel of not less than three members to receive and evaluate applications for a vacancy on the bankruptcy court and to submit a report to the Council recommending the candidates it de-

termines are best qualified[4] for the position. *See* Regulations of the Judicial Conference of the United States for the Selection of United States Bankruptcy Judges, Ch. 3, Defendants' Attachment ("Defs. Att.") 2.

The final aspect of the selection process that lies at the heart of this action is the provision in the 1984 Act by which Congress gave the first sitting bankruptcy judge preferential treatment in the initial phase of the selection process. Section 120(a)(2) of the Act expresses "the sense of the Congress that the Court of Appeals should consider for appointment under section 152 of title 28, to the first vacancy which arises after the date of the enactment of this Act in the office of each bankruptcy judge, the bankruptcy judge who holds such office immediately before such vacancy arises, if such bankruptcy judge requests to be considered for such appointment." If the incumbent requests reappointment and the Judicial Council determines that he meets the qualifications set forth in section 120(c), "[s]uch potential nominee[ ] shall receive *consideration equal* to that given all other potential nominees for such position." Section 120(b) (emphasis added).

## II. The Instant Case

Plaintiff George Francis Bason, Jr., the incumbent and sole United States Bankruptcy Judge for the District of Columbia, was appointed on February 8, 1984.[5] Since his term was due to expire on February 8, 1988, Judge Bason notified the Chief Judge of the Court of Appeals on May 26, 1987 that he wished to be considered for reappointment. Complaint ¶¶ 2, 7. The Court of Appeals then established written procedures to guide the selection process, Pl.Ex.

---

4. The requirement that the Merit Selection Panel submit a list of "best qualified" candidates is set forth in the Procedures for Selection of Bankruptcy Judges, United States Court of Appeals for the District of Columbia Circuit, ¶ 4(f). Plaintiff's Exhibit ("Pl.Ex.") 2. The Council is likewise directed to submit to the Court of Appeals only those candidates that it deems to be "best qualified." Section 120(c).

5. Anticipating the effective date of the 1984 Act, the Judges of the United States District Court for the District of Columbia extended plaintiff's appointment on April 2, 1984 for six years or until a successor was appointed, qualified, and took office. Pl.Ex. 1. Congress ultimately truncated plaintiff's appointment, however, when it provided that the terms of bankruptcy judges serving as of July 10, 1984 expired four years after the Judge's last appointment. Section 106(a).

2, and issued a public notice advertising the vacancy and soliciting applications for the job. In addition, the Chief Judge of the Court of Appeals, pursuant to a recommendation from the Chief Judge of the District Court, appointed a four-member Merit Selection Panel consisting of District Judge Norma Holloway Johnson, Dean Jerome A. Barron, Wesley Williams, Jr., and Thomas C. Papson. Declaration of Chief Judge Patricia M. Wald, United States Court of Appeals for the District of Columbia Circuit ("Wald Dec."), Defs. Att. 1 ¶ 4. The Merit Selection Panel received twelve applications for the position. *Id.* ¶ 5.

Judge Bason was one of those twelve applicants. He timely filed a 22–page application that included 118 pages of appendices. According to his affidavit, Judge Bason was given two 15–minute interviews before the Merit Selection Panel. After considering all the applications, the Panel submitted, on November 24, 1987, a written report to the Judicial Council listing the four best qualified applicants. Although the Panel's first choice was defendant S. Martin Teel, Jr., plaintiff's name was also on the list forwarded to the Judicial Council. Wald Dec. ¶ 6. On December 15, 1987, the Judicial Council held a one and one-half hour meeting and voted to send the names of three candidates—including Judge Bason and Mr. Teel—to the Court of Appeals for its consideration. *Id.* ¶ 8.

On December 18 and 21, 1987, plaintiff, Mr. Teel, and a third candidate were individually interviewed by seven of the Judges of the Court of Appeals. Plaintiff's interview lasted approximately one-half hour. The Court of Appeals met after the last interview on December 21, 1987 to discuss and vote on the three nominees. Mr. Teel was selected for the position of Bankruptcy Judge by a substantial majority. *Id.* ¶ 10.[6]

Plaintiff was advised, in a December 28, 1987 meeting with the Chief Judge, that the Court of Appeals had selected defendant Teel, rather than plaintiff, to be the Bankruptcy Judge. On January 12, 1988, and again on January 19, 1988, plaintiff wrote the Chief Judge requesting a remand to the Judicial Council for a "hearing." Pl.Exs. 4 & 5. After his January 12, 1988 letter and its appendices were circulated to each Judge of the Court of Appeals, and after none voted in favor of granting plaintiff's request for reconsideration, the acting Chief Judge informed Judge Bason that his request had been denied. Wald Dec. ¶¶ 12–13. Plaintiff's term as Bankruptcy Judge expires on February 8, 1988, on which date, at 4:00 p.m., the investiture ceremony for Mr. Teel is scheduled to commence.

Plaintiff filed this action for injunctive relief on February 1, 1988, against S. Martin Teel, Jr., and the Judicial Council of the District of Columbia Circuit. In his complaint, Judge Bason contends that his right to procedural due process under the fifth amendment of the Constitution was violated during the selection process. He argues, first, based on the requirement of section 120(b) that incumbent bankruptcy judges receive "equal consideration" before the Judicial Council, that he was deprived of due process because he was never informed of the reasons why he was not selected for reappointment and because, he asserts, he was not permitted a full and fair hearing before the Judicial Council to rebut any concerns that it might have had about his candidacy. Second, plaintiff claims that the Judicial Council did not adhere to the statutory procedures for selection and nomination set forth in section 120.

Plaintiff seeks broad relief. The complaint requests (1) declarations that the selection proceedings are void and that plaintiff should continue as Bankruptcy Judge until adequate procedures are conducted; (2) an injunction preventing defendant Teel from becoming Bankruptcy Judge while plaintiff's claims are pending; and (3) an injunction or writ to compel the Judicial Council to provide plaintiff due process,

6. The Chief Judge also contacted all of the absent members of the court to ascertain their votes. Wald Dec. ¶ 10.

specifically, notice of any claimed deficiencies in his performance and an opportunity to respond to these concerns at a hearing before the Council. In his motion for a temporary restraining order Judge Bason asks this Court to enjoin defendant Teel from taking the oath of office and assuming his duties on February 8, 1988 until such time as the motion for a preliminary injunction can be heard.

### III. Discussion

In this circuit, a court considering a request for preliminary injunctive relief must determine (1) the likelihood that the plaintiff will prevail on the merits; (2) the threat of irreparable harm to the plaintiff if injunctive relief is denied and to the defendant if the relief is granted; and (3) where the public interest lies. *Foundation on Economic Trends v. Heckler,* 756 F.2d 143, 151 (D.C.Cir.1985); *see also WMATA v. Holiday Tours, Inc.,* 559 F.2d 841, 842–43 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C. Cir.1958).

### A. Success on the Merits

#### 1. Constitutional Claim

Resolution of procedural due process claims is governed by a two-step inquiry. First, plaintiff must show that he has a life, liberty, or property interest that is protected by the Due Process Clause. Once such an interest is found, the court must then determine what process is due and whether the party claiming a deprivation of his rights has received that process. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). For the reasons outlined below, plaintiff has not persuaded the Court that he will be able to meet either prong of this test.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court defined a protected property interest for purposes of procedural due process:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a *legitimate claim of entitlement* to it.

*Id.* at 577, 92 S.Ct. at 2709 (emphasis added). Discussing the sources from which a legitimate claim of entitlement could be drawn, the Court remarked:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

██ Judge Bason contends that the "equal consideration" language contained in section 120(b) endows him with a due process property interest—a legitimate claim of entitlement to reappointment as bankruptcy judge. That provision, however, simply does not sustain the constitutional weight that plaintiff seeks to place upon it. Section 120(b) requires preferential treatment only for the first vacancy in a bankruptcy court after the effective date of the 1984 Act; if the incumbent requests reappointment and if the Judicial Council determines that the incumbent is qualified, that incumbent must then be included among the potential nominees and "[s]uch potential nominee[ ] shall receive consideration *equal* to that given all other potential nominees for that position." (Emphasis added.) Nothing in these words suggests that Congress considered the incumbent bankruptcy judge to have an entitlement of reappointment. To the contrary, the plain language of this provision mandates that the Judicial Council afford equal treatment to an incumbent who requests reappointment and who is deemed qualified. Although Judge Bason may understandably entertain "an abstract need or desire" or "a unilateral expectation" of reappointment after four years of dedicated service, that expectation cannot reasonably be read as an entitlement under section 120(b), the "rule[ ] or understanding[ ] that secure[s]" his claim to equal considera-

tion in the appointment process. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

The authorities on which plaintiff relies are not to the contrary. In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court affirmed a remand to the district court to determine whether an untenured professor whose contract had not been renewed could prove that certain university policies and practices created a legitimate expectation of entitlement to tenure. *Id.* at 600–02, 92 S.Ct. at 2699–2700. The Court, however, explicitly cited *Roth*'s requirement that property interests must be grounded in rules or mutually explicit understandings; it emphasized its disagreement with the Court of Appeals' view that a merely subjective expectation of entitlement would support a due process claim. *Id.* at 601, 603, 92 S.Ct. at 2699–2700, 2700. Here, by contrast, plaintiff does not allege any policies or practices of the Merit Selection Panel, the Judicial Council, or the Court of Appeals, or any mutually explicit understanding, that would afford him a claim to reappointment. Indeed, under the Act, plaintiff was the first and will be the only Bankruptcy Judge in this Circuit to receive preferential treatment in the initial phase of the selection process.

Plaintiff's reliance on *Halleck v. Berliner*, 427 F.Supp. 1225 (D.D.C.1977), is also inapposite. Two judicial reappointment statutes were involved in *Halleck*. Under the original law, a judge who had been appointed to the Superior Court for the District of Columbia for a fixed term by the President and confirmed by the Senate was reappointed by the same process. In that instance, the *Halleck* court noted, the incumbent "clearly had no such expectation of reappointment as amounted to a property interest." *Id.* at 1235. Under the second law, a judge seeking reappointment was rated "exceptionally well qualified," "well qualified," "qualified," or "unqualified." If she received either of the first two ratings, her reappointment was automatic; if rated "qualified," she was eligible for reappointment by the President and Senate confirmation, but reappointment was not mandated; if found "unqualified,"

she could not be reappointed. The court concluded that, under this framework, an incumbent Superior Court Judge did have "an interest in possible reappointment." *Id.* at 1236. The process established under the second statute in *Halleck*, however, is so unlike that presented in section 120(b)— which requires only equal consideration and does not mandate reappointment for bankruptcy judges who have attained a certain level of performance—that reliance on it is clearly inappropriate. Indeed, the scheme of section 120 more closely resembles the former statute, which the *Halleck* court found did *not* create a property interest.

In sum, Judge Bason has failed to show that he has a legitimate claim to appointment or possible reappointment under section 120(b). He therefore has no interest in property protected by the Due Process Clause. In the usual case, this Court's inquiry would be at end, because "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 569. Although the Court's conclusion on this threshold issue is firm, because of the unusual nature of this case, the Court will proceed to examine, assuming a protected property interest were found, what process is due and whether plaintiff in fact received that process. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985).

■ *Halleck*, a case on which plaintiff places substantial reliance, is particularly instructive on the issue of what process is due. After concluding that the "ratings" statute provided Judge Halleck with an interest in possible reappointment, the court noted that this interest "entitled him to a thorough and fair evaluation of his candidacy by an impartial Commission." 427 F.Supp. at 1236. A careful review of the record in the instant case strongly supports the conclusion that Judge Bason received fair, thorough, and impartial evaluation by the Judicial Council and that he received the equal consideration required by section

120(b). He was permitted to and did submit a lengthy application supporting his candidacy. After two interviews with the Merit Selection Panel, the Panel forwarded his name to the Judicial Council as one of the four best qualified candidates from among the original twelve applicants. He was then considered by the Judicial Council and again selected as one of the three best qualified individuals for final selection by the Court of Appeals. Lastly, he was interviewed by seven of the twelve Judges of the Court of Appeals. Nowhere in this process was Judge Bason denied the opportunity to present his qualifications for the position and his views on why he should be reappointed.[7] And, more significantly, plaintiff has not highlighted any point in the process at which other applicants for the position received more consideration than he did. Judge Bason was accorded the fair, impartial, and equal consideration to which the statute entitles him. The Due Process Clause does not require more.

Yet, Judge Bason claims that due process mandates that he receive a hearing before the Judicial Council where he could be confronted with a statement of his deficiencies and would have an opportunity to respond. Such a hearing, he asserts, would cause the Judicial Council to transmit his name as its first choice to the Court of Appeals and would result in his reappointment. There is no evidence in the record, however, save for matters stated on "information and belief" in the complaint, that Mr. Teel, not Judge Bason, was the Judicial Council's first choice.[8] Furthermore, a hearing before the Judicial Council, of course, would not guarantee the result sought by plaintiff; even after a more extensive interview or a hearing, the Judicial Council, which "assists" the Court of Appeals, might not rank plaintiff as the best qualified candidate and the Court of Appeals might still fail to select. The Court of Appeals, in fact, ultimately rejected

plaintiff's candidacy and later his motion for reconsideration, and since the Council includes all twelve of the Judges of the Court of Appeals, both of these turns of events would be most unlikely even after further process. In short, Judge Bason has not satisfied either part of the procedural due process test.

### 2. Statutory Claim

▮▮▮▮ Plaintiff cites multiple instances in which he claims that the Judicial Council violated section 120 in the selection process. Upon examination, however, each proves unfounded. Plaintiff initially contends that use of the Merit Selection Panel to screen applicants usurps the statutory authority of the Judicial Council. Section 120(b), however, directs the judicial council to forward to the Court of Appeals candidates "who are qualified to be bankruptcy judges under regulations prescribed by the Judicial Conference of the United States," and those regulations plainly permit use of a Merit Selection Panel. *See* Defs. Att. 2, at Ch. 3. Judge Bason next argues that the Panel must include a bankruptcy lawyer among its members, but the Selection Procedures promulgated by this Circuit's Judicial Council state only that the Chief Judge of the District Court "commonly recommends" such a member. Defs. Att. 3, at ¶ 4(a). In addition, plaintiff asserts that the Judicial Council received the Merit Selection Panel's report on the nominees only "moments before" its meeting and did not vote as one bloc during that meeting. These assertions, based on "information and belief," are contradicted by the direct account of Chief Judge Wald, who states that the report was circulated to all members of the Judicial Council a day or two prior to the meeting and that the Council did in fact vote as one. Wald Dec. ¶¶ 7–8. Finally, Judge Bason asserts that impermissible criteria—concerns of his alleged

---

7. Indeed, plaintiff submitted to the Merit Selection Panel a written clarification of an answer that he had given during one of his interviews, Pl.Ex. 3, and later sent to the Chief Judge two letters, one with extensive attachments, requesting reconsideration of the Court of Appeals' decision selecting Mr. Teel. Pl.Exs. 4 & 5.

8. Chief Judge Wald states only that "Messrs. Teel and Bason were included among the three nominees submitted to the Court of Appeals." Wald Dec. ¶ 8.

"pro-debtor" leaning and a lack of administrative skill—were used to judge his candidacy. The list of criteria to guide the Judicial Council in section 120(c) is, however, not exclusive but rather a compilation of *minimum* qualifications for the job.[9] The Court of Appeals, in making its decision, is required only to select "a person whose character, experience, ability, and impartiality qualify such person to serve in the Federal judiciary." Section 120(a)(1). Even assuming plaintiff might be correct that these were the concerns giving rise to his non-selection (a conclusion, of course, that this Court cannot make on the basis of the record before it), the broad standard of section 120(a)(1) clearly encompasses these concerns.

### 3. Conclusion

 The Court concludes therefore that Judge Bason does not have a substantial likelihood of prevailing on the merits should this matter proceed further. His statutory claims are not well-founded and his constitutional claim, requesting in essence preferential treatment in the selection process, is not supported by the Constitution, the 1984 Act, or pertinent caselaw.

### B. Relative Harm to the Parties

Judge Bason will no doubt suffer harm if this motion is denied, since Mr. Teel will be sworn in as Bankruptcy Judge on February 8, 1988, and Judge Bason's request for injunctive relief will then be moot. Defendant Teel would also be adversely impacted by the granting of temporary relief. Both individual interests are compelling and counterbalance each other. The Judicial Council, of course, also has an interest in insuring the orderly administration of the Circuit.

### C. The Public Interest

Consideration of the public interest weighs in favor of denying the motion for a temporary restraining order. Plaintiff's

term will expire on February 8, 1988; plaintiff cannot, as he contends, serve until his successor takes office. *See supra* note 5. If Mr. Teel's investiture is delayed, there will be no Bankruptcy Judge for the District of Columbia, a situation that will cause confusion and delay in the administration and resolution of the matters now pending in the bankruptcy court. The potential harm to the public interest weighs in favor of denying plaintiff's motion.

### IV. Conclusion

On balance, the three injunctive relief factors—likelihood of success, harm to the litigants, and the public interest—weigh in favor of denying plaintiff's motion. Although the Court is sympathetic to Judge Bason's understandable disappointment and desire to confront the reasons for his non-selection, this Court cannot impose a requirement on the Judicial Council that has no foundation in law.

Accordingly, for the reasons set forth above, it is hereby

ORDERED that plaintiff's motion for a temporary restraining order be and it is denied.

IT IS SO ORDERED.

---

**9.** The Judicial Conference regulations and the selection procedures established by this Circuit's Judicial Council reflect what a plain reading of the Act reveals: that the criteria are non-exclusive. *See* Defs. Att. 2, Ch. 1, § 1.01; Pl.Ex. 2 at ¶ 1.